1  William A. Bruce, State Bar No. 91633
     *bbruce@kleinlaw.com*
2  T. Todd Egland, State Bar No. 240911
     *tegland@kleinlaw.com*
3  KLEIN, DeNATALE, GOLDNER,
     COOPER, ROSENLIEB & KIMBALL, LLP
4  4550 California Avenue, Second Floor
   Bakersfield, California 93309
5  P.O. Box 11172
   Bakersfield, California 93389-1172
6  Telephone: (661) 395-1000
   Facsimile: (661) 326-0418

7  Attorneys for Plaintiff Figure 8 Technologies, Inc.

8  **UNITED STATES DISTRICT COURT**

9  **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

10

11  FIGURE 8 TECHNOLOGIES, INC., a
    North Carolina corporation,

12                        Plaintiff,

13          vs.

14  CALINET, LLC, a California limited
    liability company, JUSTIN SMITH, an
15  individual, MOE MUTHANA, an
    individual, ERIC CAMERLO, an
16  individual, and DOES 1 through 35,
    inclusive.

17

18                        Defendants.

19

Case No.

**Complaint for:**

1. **Violation of Digital Millennium Copyright Act – 17 U.S.C. § 1201(a)(1)**
2. **Copyright Infringement-17 U.S.C. § 501(a)**
3. **Breach of Oral Licensing Agreement**
4. **Conversion**
5. **Declaratory Relief-28 U.S.C. § 2201**

**Demand for Jury Trial**

Assigned to Hon.
Dept:
Complaint Filed:

20

21          Plaintiff FIGURE 8 TECHNOLOGIES, INC., alleges as follows:

22  **I.      Introduction**

23          1.      This is a civil complaint brought under, *inter alia*, the Digital Millennium

24  Copyright Act of 1999 ("DMCA"), 17 U.S.C. § 1201(a)(1), the Copyright Act of 1976, 17

25  U.S.C. § 501(a), and federal and state common law, regarding the Defendants'

26  unlawful circumvention of technological measures that control access to FIGURE 8

27  TECHNOLOGIES, INC.'s ("Figure 8") proprietary software programs, the

28  Defendants' breach of the terms of an oral non-exclusive licensing agreement

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

1  governing the use of Figure 8's software, the Defendants' infringement of Figure 8's

2  copyrights in the software, and the Defendants' conversion of monies properly

3  belonging to Figure 8.

4      2.    Figure 8 seeks, *inter alia*, to enjoin the Defendants from further use of

5  Figure 8's software under 17 U.S.C. §§ 502(a) and 1203(b)(1), for an order impounding

6  and ultimately compelling the Defendants to turn over to Figure 8 the software in

7  their possession, custody, and control under 17 U.S.C. §§ 503(a)(1) and 1203(b)(2) and

8  (6), recovery of damages under 17 U.S.C. §§ 504(a) and 1203(b)(3), recovery of costs

9  and attorneys' fees incurred as a consequence of Defendants' unlawful actions under

10  17 U.S.C. §§ 505 and 1203(4) and (5).

## II.    Jurisdiction and Venue

12      3.    This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28

13  U.S.C. § 1332 (diversity), 28 U.S.C. § 1338(a) (any act of Congress relating to

14  copyright), 17 U.S.C. §§ 501(a) and 1201(a)(1), and 28 U.S.C. § 2201 (declaratory

15  judgment). This Court also has supplemental jurisdiction over Figure 8's state law

16  claims under 28 U.S.C. § 1367.

17      4.    Venue is proper in this district under the Copyright Act of 1976, 17

18  U.S.C. § 501(a), the Digital Millennium Copyright Act of 1999, 17 U.S.C. § 1203(a), and

19  28 U.S.C. § 1391(b).

## III.    The Parties

21      5.    Defendant CaliNet, LLC, is an internet café operator and has been at all

22  relevant times a California limited liability company with its principal place of

23  business located in Kern County, California. Plaintiff is informed and believes, and on

24  that basis alleges, that CaliNet was formed and registered with the State of California

25  in or around March 2013. Plaintiff is informed and believes, and on that basis alleges,

26  that CaliNet currently operates four internet cafés utilizing Figure 8 software doing

27  business as:

28      A.  Reel Zone, 624 Morning Drive, Suite E, Bakersfield, California 93306;

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

B. Reel Zone #2, 2125 Edison Hwy #3, Bakersfield, California 93305;

C. Computer Time, 333 Union Ave., Bakersfield, California 93307; and

D. Web Zone, 1814 Brundage Lane, Bakersfield, California 93304.

6.      Defendant Justin Smith is now, and at all relevant times was, a resident of Kern County, California. Figure 8 is informed and believes, and on that basis alleges, that Mr. Smith operates four internet cafés utilizing Figure 8 software doing business as:

E. Reel Zone, 624 Morning Drive, Suite E, Bakersfield, California 93306;

F. Reel Zone #2, 2125 Edison Hwy #3, Bakersfield, California 93305;

G. Computer Time, 333 Union Ave., Bakersfield, California 93307; and

H. Web Zone, 1814 Brundage Lane, Bakersfield, California 93304.

7.      Defendant Mohamed (aka Moe) Muthana is now, and at all relevant times was, a resident of Kern County, California. Figure 8 is informed and believes, and on that basis alleges, that Mr. Muthana operates four internet cafés utilizing Figure 8 software doing business as:

I. Reel Zone, 624 Morning Drive, Suite E, Bakersfield, California 93306;

J. Reel Zone #2, 2125 Edison Hwy #3, Bakersfield, California 93305;

K. Computer Time, 333 Union Ave., Bakersfield, California 93307; and

L. Web Zone, 1814 Brundage Lane, Bakersfield, California 93304.

8.      Defendant Eric Camerlo is now, and at all relevant times was, a resident of Kern County, California. Figure 8 is informed and believes, and on that basis alleges, that Mr. Camerlo operates an internet café utilizing Figure 8 software doing business as Web Zone # 2, located at 9601 Weedpatch Hwy, Lamont, California 93241.

9.      Plaintiff Figure 8 is a developer of proprietary software systems utilized by internet cafés nationwide and has been at all relevant times a North Carolina corporation with its principal place of business in Greenville, North Carolina.

10.      Plaintiff is ignorant of the true names and capacities of the Defendants sued as DOES 1 through 35 and therefore sues these Defendants by such fictitious

KLEIN, DENATALE, GOLDNER, COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

1    names. Plaintiff will amend this Complaint to allege their true names and capacities

2    when ascertained.

3         11.    Plaintiff is informed and believes, and on that basis alleges, that each of

4    the Defendants designated as DOE or otherwise, is legally responsible in some

5    manner for the happenings and events referred to, and proximately caused damages

6    to Plaintiff as alleged.

7         12.    At all times mentioned, each of the Defendants, including DOES 1

8    through 35, was the agent, employee, alter ego and/or representative of each of the

9    remaining Defendants and was at all times acting within the purpose and scope of the

10   agency, employment, representation, or alter ego status, and each Defendant has

11   ratified and approved the actions of the remaining Defendants.

**IV.    Factual Background**

   **A. Figure 8's Products and Licensed Software**

13        13.    Figure 8 is a North Carolina Corporation based in Greenville, North

14   Carolina. Figure 8 was formed in 2003 and designs and develops computer software

15   applications, most notably its "Blue Diamond" software used in the operation of

16   internet cafés. Figure 8 licenses the computer software it has developed. Figure 8 sells

17   computer servers to licensees with the licensed software preinstalled on the servers.

18        14.    Licensees include owners of internet cafés that have a number of user

19   stations that are connected to the servers. The Figure 8 software manages the sale and

20   use of the computer time for each  internet café which has acquired the right to use the

21   software. An available application for the preloaded "Blue Diamond" software is a

22   component that manages promotional sweepstakes programs that may be used by the

23   internet café to promote the sale of the internet café's products and services.

24        15.    Figure 8's licensees purchase the servers and pay a software licensing fee

25   calculated on a weekly basis based upon customer usage. The payment of this fee

26   provides the licensees access to the software pre-installed on the  purchased hardware,

27   and also provides licensees the right to install Figure 8 software on user terminals

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

("UTs") installed in the licensees' stores (computers used by the customers of the stores). The software license fee is currently 28% of net sales generated through the use of the software.,

16.     Figure 8 provides two options for purchase of the servers depending on the size of the prospective internet café. The first option for small locations is an integrated point of sale (POS) processor/server in a single computer tower, which can service up to 10 UTs. The second option, for more than 10 UTs, is a separate POS processor and a separate server. No matter which option is chosen, the purchased server contains the internet café management software. The UTs contain copyrighted software that allow the customers to cooperatively interact with "Blue Diamond" software loaded on the server

**B. Defendants Muthana and Smith Purchase Hardware and Enter Into Licensing Agreement With Figure 8.**

17.     Figure 8 is informed and believes that in 2012, Defendants Moe Muthana and Justin Smith, on several occasions, visited an Internet café which utilized Figure 8 software. Apparently interested in the software, Defendants Muthana and Smith requested from the owner of the Internet café a telephone number of a sales representative for Figure 8. Defendants Muthana and Smith thereafter contacted the Figure 8 sales representative and made inquiries about the products offered by Figure 8. Through subsequent conversations, the Figure 8 representative discussed the Figure 8 internet café business model, informed Defendants Muthana and/or Smith of the hardware requirements, and discussed the software licensing fee (25% of net sales at that time and subsequently increased to 28%). It was understood by Defendants Muthana and Smith that if the software license fee was not paid on a weekly basis, access to the "Blue Diamond" software would be terminated by Figure 8. Defendants were thus informed of the licensing fee for utilizing the software, that the software was provided to them on a non-exclusive basis, that the license was dependent upon the timely payment of the licensing fee, and that the license was

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

1   terminable upon the licensee's failure to pay the licensing fee.  These terms, among

2   others, comprise a licensing agreement for the software agreed to between the plaintiff

3   and the Defendants (the "License Agreement"). Each of Defendants' stores is subject

4   to a separate License Agreement restricting use of the software if payment is withheld.

5

6       18.     In approximately May 2012, Defendants Muthana and/or Smith ordered

7   a server containing preloaded Figure 8 software and a router to connect to the

8   internet. Plaintiff is informed and believes that by no later than May 20, 2012, this

9   server and router were installed at an internet café known as Web Zone, located at

10  1814 Brundage Lane, Bakersfield, CA 93304. Web Zone generated net sales of

11  thousands of dollars per week utilizing this equipment, which sales were reported to

12  Figure 8 until approximately June  2013.

13      19.     In approximately May 2012, Defendants Muthana and/or Smith ordered

14  a second server containing preloaded Figure 8 software and a router to connect to the

15  internet. Plaintiff is informed and believes that by no later than May 27, 2012, this

16  server and router were installed at an internet café known as Web Zone #2, located at

17  9601 Weedpatch Hwy., Lamont, CA 93241. Web Zone #2 generated net sales of

18  thousands of dollars per week utilizing this equipment, which sales were reported to

19  Figure 8 until approximately June 2013.

20      20.     On June 26, 2012, Defendant Smith sent an e-mail to Figure 8 expressing

21  displeasure with Figure 8's tech support. In that e-mail, Defendant Smith complained

22  that Figure 8:

23          Make[s] 28% for doing absolutely nothing except providing
            the software and "tech support" why should I continue to
24          pay 28% if I can't get reliable tech support if its going to be
            like this, **I would like you to give me a price to buy the**
25          **software out right** since the only thing I'm paying you for
            is support, I could support the software better myself. [Sic]
26

27  In other words, Defendant Smith  acknowledged that he and Defendant Muthana did

28  not own the software licensed from Figure 8.

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

21.     In approximately November 2012, Defendants Muthana and/or Smith ordered a third server containing preloaded Figure 8 software and a router to connect to the internet. Plaintiff is informed and believes that by no later than December 30, 2012, this server and router were installed at an internet café known as Fun Zone, which Figure 8 is informed and believes was located in Dinuba, California.  Fun Zone only reported sales for the first two weeks of 2013 and no longer operates.

22.     In approximately December 2012, Muthana and/or Smith ordered a fourth server containing preloaded Figure 8 software and a router to connect to the internet. Plaintiff is informed and believes that by no later than January 20, 2013, this server and router were installed at an internet café known as Reel Zone, located at 624 Morning Drive, Suite E, Bakersfield, CA 93306. Reel Zone generated net sales of thousands of dollars per week utilizing this equipment, which sales were reported to Figure 8 until approximately June 2013.

23.     In approximately December 2012, Muthana and/or Smith ordered a fifth server containing preloaded Figure 8 software and a router to connect to the internet. Plaintiff is informed and believes that by no later than February 10, 2013, this server and router were installed at an internet café known as Computer Time, located at 333 Union Avenue, Bakersfield, CA 93307. Computer Time generated net sales of thousands of dollars per week utilizing this equipment, which sales were reported to Figure 8 until approximately  June 2013.

24.     In approximately February 2013, Muthana and/or Smith ordered a sixth server containing preloaded Figure 8 software and a router to connect to the internet. Plaintiff is informed and believes that by no later than February 10, 2013, this server and router were installed at an internet café known as Reel Zone #2, located at 2125 Edison Hwy #3, Bakersfield, CA 93305. Reel Zone #2 generated net sales of thousands of dollars per week utilizing this equipment, which sales were reported to Figure 8 until approximately  June 2013.

/ / /

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

25.    In total, Defendants Muthana and Smith purchased six Figure 8 servers and routers. Ultimately, one of the purchased servers was returned and credited to the Defendants' account (Figure 8 is informed and believes that this server was located at the Fun Zone location). As such, Defendants Muthana and Smith operated five internet cafés with Figure 8 hardware and software as the core of the business.

26.    Figure 8 normally requires store owners to set up an ACH ("automated clearing house") payment by providing a cancelled check with Figure 8. Payments are thereafter automatically deducted each week.

27.    Defendants Muthana and/or Smith originally set up such ACH accounts for at least three of their internet cafés.

28.    An ACH authorization form, dated June 13, 2012, was received from the Defendant Muthana by fax on June 14, 2012, for fees for Web Zone in Lamont. This form authorized withdrawals from Kern Central Credit Union, and provided that the authorization "is in consideration of the products and/or services provided to me by Figure 8 Technologies, Inc." The form further provides that "I understand that by revoking the authorization I am hereby giving up my right to software and services provided by Figure 8 Technologies, Inc." .

29.    A second ACH authorization form, signed by Defendant Smith, dated June 16, 2012, was received from Defendant Smith as the owner of Web Zone.

30.    A third ACH authorization form, dated July 9, 2012, was received by Plaintiff on behalf of Web Zone in Lamont.

31.    Defendant Muthana subsequently told Figure 8 he could not pay via ACH because of issues with his bank. Defendant Muthana thereafter paid the weekly software fees via money orders.

**C. Formation of CaliNet, LLC, and Transfer to Defendant Camerlo**

32.    On or about May 24, 2013, Figure 8 is informed and believes that operation of all of Defendants Muthana and Smith's above referenced internet cafés was transferred to CaliNet, LLC, which was formed in March 2013 by Defendant

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

1    Smith.

2        33.    In or about May 2013, ownership of the Web Zone #2 internet café was

3    transferred to Defendant Eric Camerlo. Defendant Camerlo subsequently changed the

4    name of this location to Game Zone. This change was confirmed in an e-mail from

5    Defendant Camerlo to Figure 8 on or about May 28, 2013.

6        34.    Figure 8 is informed and believes that Defendant CaliNet, LLC, currently

7    operates four stores, including Reel Zone, Reel Zone #2, Computer Time, and Web

8    Zone. Defendant Camerlo currently owns and operates Game Zone (formerly Web

9    Zone #2).

10        35.    In approximately June 2013, Defendants stopped making all software

11    license fee payments as required under the License Agreement.

12        36.    On July 1, 2013, counsel for Defendants Smith and CaliNet, LLC,

13    responded to a Figure 8 cease and desist letter by asserting that there was no

14    copyright infringement by CaliNet or Justin Smith because his client purchased and

15    owned the Figure 8 software and was not required to pay any software license fees.

16    Figure 8 is informed and believes that the Defendants hacked into the Figure 8

17    software to overcome technological measures provided to prevent the unauthorized

18    use of the software, and continue to the present, to utilize the Figure 8 software

19    without payment of the agreed-upon license fees.

20    **D. The Figure 8 Servers Are Protected From Access by Licensees**

21        37.    All of the copyrighted Figure 8 software that is the subject of this lawsuit

22    is protected by technological measures that effectively control access to the Figure 8

23    servers by licensees, such as Defendants.

24        38.    The servers purchased by Defendants had two levels of password

25    protection:

26            1.    The first level of protection is a *Microsoft Windows* username and

27                password.  Licensees are not given the *Microsoft Windows* username

28                and password (Figure 8 retains this information), so licensees cannot

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

login to the Figure 8 servers without hacking into the system.

2. The second level of protection is a *Windows SQL* username and password that is different from the Windows username and password.

    i. *Windows SQL* has a feature that allows a user to use their *Windows* username and password to login. However, on all Figure 8 servers this feature is disabled by default to ensure two levels of password access.

    ii. When first installed on a server, *Windows SQL* has a default username and password. Figure 8 disables this default username and password and instead sets a custom username and password to prevent second level access to *Windows SQL*.

39. The Figure 8 servers also have a security system which requires periodic check-ins with a master server located at Figure 8's facilities in North Carolina. If a particular Figure 8 server at an Internet café fails to check in with the master server every five days, internal coding instructions within that particular server disable it, and returning the server to commercial service requires new authorization from Figure 8 upon successfully checking in with the master server in North Carolina.

40. In addition, Figure 8 is also capable of disabling licensee servers in the event of non-payment by sending instructions from the master server to the Figure 8 servers—effectively an off-site "kill switch."

## V.   Claims for Relief

### A. First Claim for Relief—Violation of the DMCA, 17 U.S.C. § 1201(a)(1)

41. Figure 8 realleges and incorporates by reference each allegation contained in paragraphs 1 through 41 inclusive, set forth above.

42. All of the copyrighted Figure 8 software that is the subject of this lawsuit is protected by technological measures described above that effectively controlled access to the Figure 8 servers by licensees, such as Defendants.

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

43.     Upon information and belief, Defendants intentionally circumvented all of the protective technological measures instituted by Figure 8 to protect its copyrighted material contained on the servers acquired by Defendants. At no time did Figure 8 provide any of the username or password information for accessing the servers. Nor did Figure 8 provide permission or access for Defendants to disable the routine check in system contained in the code of the *Windows SQL* database on the servers.

44.     By circumventing the above described Figure 8 technological measures preventing access to the servers, Defendants have been able to operate the Figure 8 servers in their five internet café locations without a connection to Figure 8's North Carolina server and without remitting payment of 28% of net sales as compensation for the license of the Figure 8 "Blue Diamond" software.

45.     Defendants' conduct therefore constitutes a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1).

46.     As a result of the conduct described above, Figure 8 is entitled to relief against Defendants, including, without limitation, injunctive relief, actual damages or statutory damages in the amount of up to $25,000 per violation, statutory costs and attorneys' fees, and prejudgment interest.

**B.  Second Claim for Relief—Copyright Infringement, 17 U.S.C. § 501(a)**

47.     Figure 8 realleges and incorporates by reference each allegation contained in paragraphs 1 through 47 inclusive, set forth above.

48.     Figure 8 holds valid and exclusive copyrights to the "Blue Diamond" software that is the subject of this action and has filed applications for federal registration with the United States Copyright Office which are currently pending.  .

49.     Figure 8 is informed and believes that Defendants have reproduced, distributed, displayed, and created derivative works of the "Blue Diamond" software for commercial purposes without Figure 8's authorization.

/ / /

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

50.     The actions and conduct of Defendants as described above, directly, contributorily, and/or vicariously infringe the exclusive rights of Figure 8 granted by Copyright Act, 17 U.S.C. § 106, to display, reproduce, distribute and create derivative works based on Figure 8's registered (pending) copyrighted works.

51.     Such actions and conduct by Defendants constitute copyright infringement under Copyright Act, 17 U.S.C. § 501.

52.     As a result of the copyright infringement described above, Figure 8 is entitled to relief against Defendants which may include injunctive relief, actual damages or statutory damages, statutory costs and attorneys' fees, and prejudgment interest.

**C.  Third Claim for Relief –Breach of Oral Licensing Agreement**

53.     Figure 8 realleges and incorporates by reference each allegation contained in paragraphs 1 through 53 inclusive, set forth above.

54.     Figure 8 and Defendants' entered into a series of License Agreements for Defendants' five internet cafés beginning on or about May 2012, as alleged above.

55.     Figure 8 has performed all conditions necessary to trigger Defendants' obligations under the License Agreements.

56.     Under the License Agreements, Defendants are required to pay Figure 8 28% of net sales it realizes using the "Blue Diamond" software as a software license fee.

57.     Defendants' have deliberately severed the electronic link between Figure 8's master server and the Defendants' stores by circumventing Figure 8's security protocols. In addition, Defendants' have stopped remitting payment of the software license fee to Figure 8 in direct breach of the License Agreements.

58.     Defendants have committed a substantial breach of the License Agreements by failing and refusing to make payments to Figure 8.

59.     As a direct and proximate result of Defendants' breach of the License Agreements, Figure 8 has suffered damages, and continues to suffer damages, in an

1  amount to be proven at trial, but at least in the sum of $83,321.61.

2    **D. Fourth Claim for Relief—Conversion**

3    60.    Figure 8 realleges and incorporates by reference each allegation

4  contained in paragraphs 1 through 60 inclusive, set forth above.

5    61.    At all times herein mentioned, Figure 8 was the sole owner of 28% of all

6  net sales made by Defendants in the operation of their internet cafés utilizing Figure

7  8's "Blue Diamond" software, and is therefore entitled to possession and control

8  thereof.

9    62.    Sometime in May or June of 2013, Defendants, without authorization or

10  consent of Figure 8, first began circumventing Figure 8's servers in order to either pay

11  less than the required license fee or ultimately to pay themselves 100% of the net sales

12  from the operation of the "Blue Diamond" software in the Defendants' internet cafés,

13  in deliberate breach of the applicable License Agreement and to permanently deprive

14  Figure 8 of its 28% license fee.

15    63.    Defendants have intentionally interfered with Figure 8's software from

16  Figure 8's possession and converted the same to Defendants' own use or control.

17    64.    As a proximate result of Defendants' conversion, Figure 8 has been

18  deprived of monies in an amount of at least $83,321.61, or according to proof at trial.

19  However, the Defendants' conversion is ongoing so long as the subject stores remain

20  in operation. As such, Figure 8's actual damages are increasing on a daily basis.

21    65.    As result of Defendants' conversion of Figure 8's monies as described

22  above, Figure 8 has been forced to hire attorneys and expend funds to bring this action

23  to recover its converted property from Defendants to Figure 8's further damage in a

24  sum according to proof at trial.

25    66.    Defendants' acts, as alleged above, were willful, wanton, malicious and

26  oppressive, and justify the awarding of exemplary and punitive damages.

27    67.    Figure 8 alleges damages of at least $83,321.61, or an amount according

28  to proof at trial.

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

### E.  Fifth Claim for Relief — Declaratory Relief, 28 U.S.C. § 2201

68.     Figure 8 realleges and incorporates by reference each allegation contained in paragraphs 1 through 68 inclusive, set forth above.

69.     An actual controversy has arisen and now exists between Figure 8 and the Defendants regarding their respective rights, duties, and obligations in connection with Defendants' circumvention of Figure 8's technological measures that effectively control access to the Figure 8 servers and Defendants' subsequent infringing of Figure 8's copyrighted software.

70.     Figure 8 is informed and believes that Defendants claim that, rather than a license, they own the Figure 8 software that came pre-installed on the Figure 8 servers and that, as such, they were free to disconnect from Figure 8's North Carolina server and to direct all net sales to themselves. Plaintiffs have demanded that Defendants cease and desist from infringing Plaintiff's copyrights and Defendants assert they are entitled to use of the Figure 8 software without payment of additional fees.

71.     Figure 8 asserts that Defendants' circumvention of Figure 8's protective measures and subsequent continuing use of Figure 8's software is in violation of the DMCA, 17 U.S.C. § 1201(a)(1), and the Copyright Act of 1976, 17 U.S.C. § 501(a).

72.     Figure 8 desires a judicial determination that, in violation of 17 U.S.C. § 1201(a)(1), 17 U.S.C. § 501(a), and applicable California state law, Defendants wrongfully circumvented Figure 8's technological measures that effectively control access to the Figure 8 servers and are continuing to infringe on Figure 8's valid and exclusive copyrights.

## VI.  Prayer for Relief

### First and Second Claims for Relief

A.     For orders temporarily, preliminarily, and then permanently enjoining
           Defendants from infringing Figure 8's copyrighted software pursuant to
           Section 502 of the Copyright Act, 17 U.S.C. § 502, and permanently

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

enjoining Defendants from circumventing Figure 8's technological measures that effectively control access to the Figure 8 servers under the DMCA, 17 U.S.C. § 1203(b);

B. For an award of Defendants' profits and for damages in such amount as may be found, or for statutory damages of (a) not less than $750 or more than $30,000 per server and UT pursuant to 17 U.S.C. § 504(c)(1) or, upon a finding of willful infringement pursuant to 17 U.S.C. § 504(c)(2), up to $150,000 per server and UT, and (b) not less than $2,500 or more than $25,000 per server and UT pursuant to 17 U.S.C. § 1203(c)(3)(B);

C. For an award of costs, pursuant to 17 U.S.C., Sections 505 and 1203(b)(4);

D. For an award of reasonable attorneys' fees, pursuant to 17 U.S.C., Sections 505 and 1203(b)(5);

E. For an award of prejudgment interest on the amount of any award to Figure 8; and

F. For such other and further relief as the Court deems just and equitable.

**Third Claim for Relief**

G. For damages in an amount to be proven at trial, but at least in the sum of $83,321.61;

H. For interest at the maximum legal rate;

**Fourth Claim for Relief**

I. Compensatory damages in an amount to be proven at trial, but in no event to be less than $83,321.61;

J. Punitive damages in an amount to be determined at trial and in an amount to deter Defendants from engaging in similar future conduct;

**Fifth Claim for Relief**

K. A declaratory judgment under DMCA, 17 U.S.C. §§ 501(a) and 1201(a)(1) and 28 U.S.C. § 2201 declaring that Defendants wrongfully (1) infringed Figure 8's copyrighted software, and (2) circumvented Figure 8's

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309

1    technological measures that effectively control access to the Figure 8

2    servers;

3    **All Claims for Relief**

4    L.    For reasonable attorney's fees and costs, to the extent allowed by

5    applicable law or contract;

6    M.    For costs of suit incurred herein; and

7    N.    For such other relief as the Court may consider appropriate.

8  **VII.  Jury Demand—F.R.C.P. Rule 38(b)**

9    Figure 8 Technologies demands a jury trial of all issues triable of right by a jury.

10

11  Dated: 7/22/13

12                                    KLEIN, DeNATALE, GOLDNER,
13                                    COOPER, ROSENLIEB & KIMBALL, LLP

14                                    By_____
15                                    WILLIAM A. BRUCE
                                      T. TODD EGLAND
16                                    Attorneys for Figure 8 Technologies, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP
4550 CALIFORNIA AVENUE, SECOND FLOOR
BAKERSFIELD, CALIFORNIA 93309